UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL ROGER NELSON,<br><br>Plaintiff,<br><br>v.<br><br>GARY LOCKE, et. al.,<br><br>Defendants. | NO. CV-03-5126-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

On February 28, 2005, Defendant moved for summary judgment. **(Ct. Rec. 60.)** On March 14, 2005, the Plaintiff moved for an extension of time in which to respond to the summary judgment motion. (Ct. Rec. 67.) The Court granted Plaintiff's motion for an extension of time and sent Plaintiff the required summary judgment information applicable to pro se plaintiffs. In response to Defendant's motion for summary judgment, Nelson filed a document entitled "Material Facts in Opposition to Defense Motion for Summary Judgment," (Ct. Rec. 79), consisting of some 323 pages of various documents. The parties consented to proceed before a magistrate judge. (Ct. Rec. 35.) The matter now before the Court is Defendant's motion for summary judgment of Plaintiff's §1983 civil rights claims, set without argument on April 29, 2005. Plaintiff alleges violations of the RLUIPA, retaliation by prison

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 1

officials for exercising his constitutional rights, and violations of the Eighth and Fourteenth amendments.

Careful review of Nelson's submissions in opposition to the summary judgment demonstrates that the arguments raised by the defendants in their summary judgment motion remain unanswered and in most cases are supported by Nelson's documentation. For example, Plaintiff's documents at 247-249 show that Plaintiff's concern regarding cold temperatures in his cell was investigated and he was moved.

## I. Summary Judgment

When considering a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the court's role is not to weigh the evidence, but merely to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Freeman v. Arpaio*, 125 F. 3d 732, 735 (9th Cir. 1997). Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, the court determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Vander v. United States Dep't of Justice*, 268 F. 3d 661, 663 (9th Cir. 2001).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256.

A party opposing a properly supported motion for summary

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 2

judgment must set forth specific facts showing that there is a genuine issue for trial. *Harper v. Wallingford*, 877 F. 2d 728, 731 (9th Cir. 1989). To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322-23. The opposing party may not rest on conclusory allegations or mere assertions, *see Leer v. Murphy*, 844 F. 2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, *see Sanchez v. Vild*, 891 F. 2d 240, 242 (9th Cir. 1989). The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where "the factual context renders [the non-moving party's] claim implausible . . ., [that party] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary" to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

The materiality of facts is determined by looking to the substantive law that defines the elements of the claim. *Nidds v. Schindler Elevator Corp.*, 113 F. 3d 912, 916 (9th Cir. 1996).

## II. RLUIPA violation

Plaintiff's first claim is that prison officials violated the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc et seq. ("RLUIPA".) This statute provides that "no government shall impose a substantial burden on the religious exercise" of prisoners unless the government can demonstrate that

the burden both serves a compelling government interest and is the least restrictive means of advancing that interest. 42 U.S.C. §2000cc-1(a); *Mayweathers v. Newland*, 314 F. 3d 1062 (9th Cir. 2002). A substantial burden means "a significantly great restriction or onus" on a person's religious exercise. *See San Jose Christian College v. City of Morgan Hill*, 360 F. 3d 1024, 1033-34 (9th Cir. 2004).

Defendant points out that Plaintiff admitted during his deposition that "his world view based on race is not a religion." (Ct. Rec. 61 at p. 4.) Plaintiff nonetheless argues that his world view based on race implicates his religious exercise. Defendant also notes that Plaintiff fails to identify any regulation that substantially burdened the practice of his questionable religion. For the sake of argument, it appears that Plaintiff's specific RUILPA challenges relate to three matters, and for purposes of this motion the Court will assume that Mr. Nelson's racial views are a religion.

Plaintiff first alleges that he was deprived of his rights under the RLUIPA because he was required to attend a cultural diversity course. On October 25, 2002, Mr. Nelson read and signed a Washington State Penitentiary Reintegration Contract. (Ex. 6; Ct. Rec. 61 at 7.) By signing this contract, Plaintiff agreed to participate in cultural diversity classes. After signing the contract Mr. Nelson was placed back in the general population. (Ct. Rec. 61 at 19. ) He eventually attended the cultural diversity class and wrote a thesis paper where he acknowledged that he enjoyed the class, that "it has opened my eyes to some shocking realities. The 'class' curriculum is tyranny of all other

groups over Anglo-Nordic males." (Ct. Rec. 79 at 37.)

Plaintiff alleges he was substantially burdened in his ability to practice his white supremacist religion when he attended the required cultural diversity course "because all the stories in the book were from a non-white perspective." (Ct. Rec. 61 at 83.) This apparently offended the Plaintiff's racial views. The Defendant responds that the course was part of a disciplinary process to reintegrate Plaintiff into the general population, and the course is designed to further the goal of reducing tension among inmates of different races and cultural backgrounds.

The Ninth Circuit has upheld policies prohibiting the preaching of racial hatred and violence for obvious security reasons. *See McCabe v. Arave*, 827 F. 2d 634, 637 (9th Cir. 1987). Requiring attendance at a course designed to improve prison security does not substantially burden Plaintiff's religious exercise; nor does mere offense rise to the level of a substantial burden on Plaintiff's right to religious exercise. Mr. Nelson's required attendance at a cultural diversity course following his discipline for threatening behavior does not establish a violation of the RLUIPA. This claim fails.

Plaintiff contends his rights under the RLUIPA were violated when prison authorities confiscated a book and a magazine belonging to him. These materials apparently espoused Plaintiff's ideals of white supremacy. It is undisputed that these materials were found in another inmate's cell, not in Mr. Nelson's. (Ct. Rec. 61 at 72; 81.) According to the Defendant, leaving one's belongings in another person's cell violates institutional policy: an item not in the owner's possession is contraband. (DOC Policy

Directive 440.00 Inmate Property; Ct Rec. 61 at 7.) At his deposition Plaintiff admitted that he knew of this regulation. In his response to this motion Plaintiff submitted materials that, on the one hand, indicate he mistakenly left the materials in the wrong location, and on the other hand contend that he was sharing information regarding "religious" views. (Ct. Rec. 79 at 156.) Because the materials were confiscated due to their location, rather than their content, the confiscation of these items by prison officials does not violate the RLUIPA. This claim fails.

Plaintiff alleges that prison officials substantially burdened his exercise of religion when they refused to send a tithe or money offering on his behalf. Mr. Nelson wanted to send his tithe to an individual who was not named on his visitor's list. This is prohibited by the DOC Policy Directive 200.00, Trust Accounts for Offenders. (Ct. Rec. 61 at 7.) Prison officials told Plaintiff that he could have his tithe sent to a church or organization, or to someone on his visitor's list. After being advised of this policy, Plaintiff elected not to send a tithe.

There is no showing that this regulation substantially burdened Plaintiff's exercise of religion since he could have sent his tithe to a church or an organization. This claim fails.

**III. Retaliation for exercising constitutional rights in violation of 42 U.S.C. §1983.**

Plaintiff next argues that prison officials retaliated against him for exercising his constitutional rights in violation of 42 U.S.C. §1983. Defendant answers that Mr. Nelson has not made out a viable civil rights claim.

"Traditionally, the requirements for relief under [section]

1983 have been articulated as (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumtpon v. Gates*, 947 F. 2d 1418, 1420 (9th Cir. 1991). Or, more simply stated, courts require plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F. 2d 1334, 1338 (9th Cir. 1986).

"A prisoner suing prison officials under §1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving order and discipline." *Barnett v. Centoni,* 31 F. 3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Vignolo v. Miller*, 120 F. 3d 1075, 1077-78 (9th Cir. 1997). Such claims must be evaluated in light of the deference that must be accorded to prison officials. *See Pratt v. Rowland*, 65 F. 3d 802, 807 (9th Cir. 1995). The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Compare Pratt* (finding insufficient evidence) *with Valadingham v. Bojorquez*, 866 F. 2d 1135, 1138-39 (9th Cir. 1989) (finding sufficient evidence). Finally, the prisoner must demonstrate that his First Amendment rights were in fact chilled by the alleged retaliatory action. *See Resnick v. Hayes*, 213 F. 3d 443, 449 (9th Cir. 2000).

Plaintiff alleges retaliation by prison officials Pease, Holevinski, Schettler, and Buttice.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 7

1    <u>Pease</u>.   Plaintiff alleges that Clifford Pease retaliated
2 against him by failing to investigate his grievance and by voting
3 against his custody promotion. The record shows that prison
4 officials investigated Mr. Nelson's grievance. (Ex. 8; Ct. Rec. 61
5 at 143.) Consequently, this claim fails because it has no support
6 in the record. With respect to voting against Plaintiff's custody
7 promotion, a prisoner has no liberty interest in a particular
8 classification or custody level. *Sandin v. Connor*, 515 U.S. 472,
9 476 (1995). Accordingly, Plaintiff's lack of custody promotion
10 cannot establish retaliation. In addition, Mr. Nelson fails to
11 establish any link between his religious exercise and retaliation
12 by Pease. Consequently, neither of Plaintiff's bases establish his
13 claim of retaliation by Pease.

14    <u>Schettler.</u>   Plaintiff alleges that Carla Schettler retaliated
15 by failing to investigate his grievance and by having him sign the
16 reintegration contract. As noted, prison officials investigated
17 Plaintiff's grievance. (Ex. 8.) And, as noted, no constitutional
18 rights were chilled by having Plaintiff agree to remedial
19 measures, including attending a cultural diversity course, in
20 order to earn his return to the general population after being
21 disciplined for threatening behavior, a clear security concern.
22 His claim of retaliation by Schettler fails.

23    <u>Buttice</u>. Plaintiff alleges that Melissa Buttice retaliated by
24 premising his custody promotion on Plaintiff not submitting any
25 further grievances. Buttice denies this. (Ct. Rec. 61 at 140.) The
26 defendant correctly points out, however, that even if true, verbal
27 threats or harassment are insufficient to establish a
28 constitutional violation. (Ct. Rec. 61 at 8), citing *Gaut v. Sunn*,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 8

810 F. 2d 923 (9th Cir. 1987).

Holevinski. Plaintiff alleges that Holevinski retaliated by recommending that Mr. Nelson be maintained at close custody. However, as the Defendant correctly points out, this recommendation was based the seriousness of Mr. Nelson's criminal behavior, the length of his remaining time, and his poor overall institutional adjustment. (Ct Rec. 61 at 9; Ex. 9.) These factors influence the safety and security of the prison, and as such are proper reasons for the custody level determination. Additionally, as noted, there is no liberty interest in a particular classification or custody level. *Sandin*, 515 U.S. at 476. Mr. Nelson also fails to establish any link between his religious practice and retaliation. His claim of retaliation by Holevinski fails.

### IV. 8th Amendment rights

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Osolinski v. Kane*, 92 F. 3d 934, 937 (9th Cir. 1996). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F. 2d 1080, 1107 (9th Cir. 1986); *see also Johnson v. Lewis*, 217 F. 3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F. 2d 1237, 1246 (9th Cir. 1982).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 9

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Cabrales v. County of Los Angeles*, 864 F. 2d 1454, 1462 (9th Cir. 1988) (subsequent history omitted); *Toussaint*, 801 F. 2d at 1107. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). When considering the conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition. *See Hutto v. Finney,* 437 U.S. 678, 686-87 (1978); *Hoptowit*, 682 F. 2d at 1258.

As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to inhumane conditions of confinement to establish an Eighth Amendment violation. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303.

Plaintiff alleges his cell was without adequate heat for two days during January of 2004. He stated at his deposition that "it was several degrees below zero outside and there was ice in my cell. And they refused to give me an extra blanket." (Ct. Rec. 61 at 49.) Mr. Nelson admitted that "the weather exceeded the design capacity for the facility." (Id.) At the time Mr. Nelson complained to officials about the cold, he asked to be moved, to

be given extra clothing, or to be issued two extra blankets. (Plaintiff's Statement of Material Facts at 247-49.) He was moved. (Id.)

On this record, Plaintiff fails to establish deliberate indifference to inhumane conditions of confinement. Mr. Nelson complains that officials failed to provide an *extra* blanket – meaning that although the temperature was cold for two days, he did have a blanket. Plaintiff admitted the weather exceeded the building's [heating] capacity, defeating his claim of deliberate indifference. The undisputed facts presented are that Mr. Nelson was in a cold cell for two days, he was provided with a blanket but not an extra blanket, he admitted that cold weather exceeded the building's capacity, and he was moved to another cell. This does not show deliberate indifference on the part of prison officials constituting cruel and unusual punishment as proscribed by the Eighth Amendment.

Plaintiff alleges his rights under the Eighth Amendment were violated when he was placed in administrative segregation. As noted previously, there is no constitutional right to a particular custody level. Plaintiff does not establish that his custody level violated his rights under the Eighth Amendment. During his period of confinement in administrative segregation, Mr. Nelson was permitted outdoor exercise. He took his meals in his cell. He does not allege that he was deprived of any of his basic needs while in administrative segregation as required by the Constitution. This claim fails.

Plaintiff next alleges that the medical care he received amounted to a violation of his rights under the Eighth Amendment.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 11

Defendant responds that Mr. Nelson fails to establish deliberate indifference to a serious medical need.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *see also Lopez v. Smith*, 203 F. 3d 1122, 1131 (9th Cir. 2000)(en banc). This rule applies to "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F. 2d 1237, 1253 (9th Cir. 1982). In deciding whether there has been deliberate indifference to an inmate's serious medical needs, the court need not defer to the judgment of prison doctors or administrators. *See Hunt v. Dental Dep't*, 865 F. 2d 198, 200 (9th Cir. 1989)(citation omitted). State prison authorities have wide discretion regarding the nature and extent of medical treatment. *Jones v. Johnson* 781 F. 2d 769, 771 (9th Cir. 1986).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *McGuckin v. Smith*, 974 F. 2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F. 3d 1133, 1136 (9th Cir. 1997)(en banc)(internal quotation omitted). The court should consider whether a reasonable doctor would think that the condition is worthy of comment, whether the condition significantly affects the prisoner's daily activities, and whether the condition is chronic and accompanied by substantial pain. *See Lopez,* 203 F. 3d at 1131-32.

The medical record shows that Mr. Nelson has been treated for depression and anxiety, and for chronic folliculitis, a recurring condition. (Ex. 10.) Doctors have prescribed several medications,

including antibiotics. (Id.) As the Defendant correctly notes, there is nothing in the record indicating that Mr. Nelson did not receive proper treatment for his medical conditions. (Ct. Rec. 61 at 14-15.) It appears that Plaintiff was given his prescribed medication. (Id.) The record also shows that apparently Mr. Nelson did not complain about his medical care until he filed his complaint. Because there is no factual support for it in the record, Plaintiff's claim of deliberate indifference to his medical needs fails.

## V. 14th Amendment rights

To articulate a due process claim under section 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F. 3d 329, 333 (2d Cir. 1998). When deciding whether the Constitution itself protects an alleged liberty interest of a prisoner, the court should consider whether the practice or sanction in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Hewitt v. Helms*, 459 U.S. 460, 466-70 (1983).

Plaintiff argues that placing him in administrative segregation based on a decision by a review committee of three members violated his right to due process. Defendant responds that transfer among various security classifications is within the expected terms of prisoner confinement and is thus not protected by the due process clause. Alternatively, Defendant maintains that the procedures which led to Mr. Nelson's placement comported with due process in that he was able to appeal the classification determination and his custody level was timely reviewed within the

schedule set by institutional policy. (Ct. Rec. 61 at 18-19.) The documents filed by Plaintiff in response to this motion show that on several occasions he filed grievances, participated in grievance procedures, and appealed decisions following these procedures.

With respect to placement in administrative segregation, the Due Process Clause itself does not grant prisoners a liberty interest in remaining in the general population. *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); *Hewitt*, 459 U.S. at 468.

Additionally, the procedures afforded Mr. Nelson for placing him in administrative segregation included a determination by a review committee of three members, the ability to appeal the decisions, and timely review. (Ex. 5.) Mr. Nelson fails to establish that these procedures afforded him anything less than due process.

**VI. Defenses**

Defendant raises the defenses of lack of personal participation, improper reliance on the doctrines of respondeat superior and vicarious liability, application of the 11th Amendment, and qualified immunity.

With respect to defendants Locke, Lehman and Thatcher, Defendant opines that Plaintiff fails to establish personal participation by any of them and instead improperly relies on theories of respondeat superior and vicarious liability. (Ct. Rec. 61 at 16.)

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if

1 the supervisor participated in or directed the violations, or knew
2 of the violations and failed to act to prevent them. There is no
3 respondeat superior liability under [§] 1983." *Taylor v. List*, 880
4 F. 2d 1040, 1045 (9th Cir. 1989)(citation omitted); *Ortez v.*
5 *Washington County*, 88 F. 3d 804, 809 (9th Cir. 1996)(concluding
6 proper to dismiss where no allegations of knowledge of or
7 participation in alleged violation).

8    Defendant is correct. Plaintiff admitted in his deposition
9 that he is suing Governor Gary Locke under a theory of
10 supervisory, rather than participatory, liability. (Ct. Rec. 61 at
11 87; 20-25; 88.) Plaintiff similarly admits suing Joseph Lehman as
12 DOC Secretary and James Thatcher because he is a "figurehead."
13 (Ct. Rec. 61 at 88; 18-25; 89.) Mr. Nelson sues Associate
14 Superintendent Al Scamahorn because Plaintiff was "going through
15 the chain of command." (Ct. Rec. 61 at 91.) Consequently,
16 defendants' motion to dismiss Mr. Nelson's claims against Locke,
17 Lehman, Thatcher and Scamahorn is **GRANTED** because Plaintiff
18 alleges no personal participation by these named defendants.

19   In a similar vein is Plaintiff's claim against Richard
20 Morgan. Mr. Nelson sues him because he is the WSP Superintendent
21 and because Plaintiff served him with a form letter advising that
22 he (Mr. Nelson) was being retaliated against. Plaintiff states
23 that he mailed this just before filing the lawsuit. (Ct. Rec. 61
24 at 89.) Mr. Nelson is also suing Morgan because he is unhappy that
25 some of his appeals were denied. (Ct. Rec. 61 at 90.) Plaintiff's
26 claim against Mr. Morgan fails because again it is not premised on
27 Mr. Morgan's personal participation, and the defendants' motion to
28 dismiss Mr. Nelson's claim against Mr. Morgan is **GRANTED**.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 15

Mr. Nelson sues Ron Knight because he continued him in administrative segregation. (Ct. Rec. 61 at 92.) As noted, this alone does not raise constitutionally protected interests. Similarly, Plaintiff sues Mr. Ramsey because he reviewed one of Mr. Nelson's classification forms. (Ct. Rec. 61 at 117.) The motion to dismiss Plaintiff's claim against Knight and Ramsey is **GRANTED**.

With respect to the remaining defendants, the Court finds that Plaintiff fails to properly assert a constitutional violation. Even if plaintiff had established a constitutional violation, summary judgment in favor of defendants would still be proper because of qualified immunity.

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)(citations omitted); *see also Sorrels v. McKee*, 290 F. 3d 965, 969 (9th Cir. 2002).

Qualified immunity is only an immunity from suit for damages. It is not an immunity from suit for declaratory or injunctive relief. *See Los Angeles Police Protective League v. Gates*, 995 F. 2d 1469, 1472 (9th Cir. 1993).

Analyzing qualified immunity is a three-step process. First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show that the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must

determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. Finally, the court must conclude whether a reasonable officer in these circumstances would have thought her or his conduct violated the alleged right. *Saucier*, 533 U.S. at 205.

The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed that the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F. 3d 965, 969 (9th Cir. 2002).

Plaintiff fails to establish in the first instance a violation of his constitutionally protected rights. Even if Mr. Nelson could be seen as meeting this burden, however, the record reveals that the defendants reasonably believed that their conduct toward Mr. Nelson was lawful. On this basis the defendants are entitled to qualified immunity as a matter of law.

The Court finds that plaintiff fails to set forth specific facts showing that there is a genuine issue of material fact for trial.

Accordingly,

Defendant's Motion for Summary Judgment **(Ct. Rec. 60)** is **GRANTED.**

**IT IS SO ORDERED**. The District Court Executive is hereby directed to enter this Order, enter judgment for Defendant and furnish copies to Plaintiff and to counsel.

**DATED** this 2nd day of May, 2005.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT  - 17

1 ///
2 ///
3 ///
4 ///
5 ///                                    s/ Michael W. Leavitt
6                                        MICHAEL W. LEAVITT
                                          United States Magistrate Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT   - 18